C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
  UNITED STATES OF AMERICA,         :

                                    :   **MEMORANDUM DECISION AND**

                                    :   **ORDER**

          - against -           :

                                    :   10-cr-531 BMC)

                                    :

  JOEL GONZALES,                  :

                                    :

                                    :

                     Defendant.    :
------------------------------------------------------------ X

**COGAN**, District Judge.

     Defendant *pro se* moves for compassionate release pursuant to 18 U.S.C.

§ 3482(c)(1)(A) or, alternatively, retroactive Guideline amendment relief pursuant to 18 U.S.C.

§ 3582(c)(2). The Government opposes. Defendant has failed to demonstrate the criteria for

either form of relief, so the current motion is accordingly denied.

## BACKGROUND

     Drug dealers are often sitting ducks for robbers because drug dealers cannot call the

police for protection. As a result, various gangs specialize in robbing drug dealers. Defendant, a

drug addict himself, was a member of one such crew that preyed upon drug dealers, many of

whose victims were involved with Mexican cartels. The crew of which defendant was a member

committed over 40 robberies and attempted robberies across several states. Those robberies

involved shootings, stabbings, torture, kidnappings, assaults, and physical restraints. The net

proceeds of these crimes yielded massive amounts of cocaine and hundreds of thousands of

dollars in drug money.

     Defendant was involved in over a dozen of these robberies, and he was indicted along

with 14 other co-conspirators on multiple counts. In 2013, defendant pled guilty to a single

count Superseding Information for Hobbs Act robbery, 18 U.S.C. § 1951(a), based on a robbery that occurred in 2009. His sentencing Guidelines factored in several of his prior convictions and were enhanced by the fact that during the robbery, one of his co-conspirators restrained and shot someone, and drugs and guns were stolen. With a criminal history category of VI, defendant's sentencing Guidelines range was 188 to 235 months in custody, and this Court sentenced him to 204 months' custody. The Second Circuit dismissed his direct appeal upon a motion to withdraw from his counsel and the Government's motion for summary affirmance.

In 2017, defendant filed his first motion to reduce sentence under § 3582(c)(2). That motion was based on his view that Amendment 1B1.10(c) retroactively applied to amend his Guidelines range due to the amount of drugs involved. The Court denied his motion because his Guidelines at sentencing were not based on drug quantity, but on the robbery that he committed.

In 2019, defendant moved for habeas corpus relief under 28 U.S.C. § 2255 on the ground that he had been improperly sentenced as a career offender. The Court denied his motion because he had not been sentenced as a career offender (despite being eligible for such designation), but had instead received non-enhanced points for his crime and his criminal history. He then sought reconsideration, which the Court ultimately denied, while also filing an appeal, which the Second Circuit dismissed summarily as lacking in merit.

In the instant motion, defendant's grounds for relief are: (1) retroactive Guideline amendment based on Amendment 821; (2) his criminal history at sentencing (Category VI) was excessive because certain of his convictions were too old to count, especially considering his young age at the time of these older convictions; (3) extraordinary and compelling reasons, including: rehabilitation efforts, family circumstances based on him being a father, abuse and injury while in custody, difficult prison conditions during the COVID-19 pandemic, and

2

rehabilitation while in custody; (4) ineffective assistance of counsel; and (5) his sentence should have been made to run concurrently with a prior state term of custody.

## DISCUSSION

### I.    Retroactive Guideline Amendment Relief

"In determining whether, and to what extent, a reduction in the defendant's term of imprisonment ... is warranted" pursuant to Amendment 821, the Court must first "determine the amended guideline range that would have been applicable to the defendant if" Amendment 821 "had been in effect at the time the defendant was sentenced."  U.S.S.G. § 1B1.10(b)(1).  A reduction of sentence is not authorized if Amendment 821 does not lower the defendant's applicable Guidelines range.  See id. § 1B1.10(a)(2).

"As relevant here, Part A of Amendment 821 alters a provision of the Guidelines that applies additional criminal history 'status points' for those who committed the offense while subject to a criminal justice sentence."  United States v. Falu, No. 21-cr-44, 2026 WL 1396600, at *1 (S.D.N.Y. May 19, 2026) (citing U.S.S.G. § 4A1.1(e)).  "Part B of Amendment 821 provides that a defendant who does not have any criminal history points and who meets other specified criteria is entitled to a two-level reduction of his offense level."  Id. (citing U.S.S.G. § 4C1.1).

Pursuant to U.S.S.G. § 4A1.1(d) – which Amendment 821 has since superseded – defendant received two points for committing the instant offense while on parole following a criminal justice sentence.  Pursuant to U.S.S.G. § 4A1.1(e) – which replaced subsection (d) – defendant should instead receive just one point for committing the instant offense while on parole.  But even with that adjustment, defendant's total offense level does not change, and he remains in Category VI.  "Moreover, although Part B of Amendment 821 creates a provision that

3

provides a two-level downward adjustment in offense level for those who have zero criminal history points and meet other criteria, [defendant] has more than zero criminal history points, rendering him ineligible for a reduction under Part B." See Falu, 2026 WL 1396600, at *1. As a result, defendant is not eligible for a sentence reduction under Amendment 821 because his Guidelines range remains the same.

## II. Compassionate Release

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). One of the few "escape hatches" appears in 18 U.S.C. § 3582(c)(1)(A). Despite being entitled "compassionate release," the statute allows either a release from custody, or a reduction of the imposed sentence. Reynolds v. United States, No. 99-cr-520, 2022 WL 1444167, at *4 (E.D.N.Y. May 6, 2022).

There are three findings that a court must make in determining whether to release a defendant or reduce his sentence under the compassionate release statute: that (1) "extraordinary and compelling reasons warrant such a reduction"; (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the § 3553(a) factors – the same factors that the court applied in sentencing him in the first place, adjusted for current circumstances – weigh in favor of immediate release or a reduction in sentence. United States v. Donato, No. 95-cr-223, 2024 WL 1513646, at *5 (E.D.N.Y. Apr. 8, 2024) (quoting § 3582(c)(1)(A)). Additionally, as a threshold matter, a defendant may move for compassionate release only after he has exhausted his administrative remedies within the Bureau of Prisons ("BOP"). § 3582(c)(1)(A).

4

### A.    Exhaustion

A defendant may seek compassionate release only after either (1) fully exhausting administrative appeals within the BOP regarding a sentence reduction, or (2) thirty days have passed since the warden received such a request.  Id.  Under BOP regulations, to exhaust the administrative appeals process, an inmate must: "(1) raise the issue informally with staff via a form BP-8; (2) file a BP-9 to the warden; (3) if denied or if the warden fails to respond after 20 days, appeal to the Regional Director using a BP-10; and (4) if still denied, file a final appeal to the BOP's Central Office via a BP-11." United States v. Ayers, No. 21-cr-440, 2025 WL 2925096, at *2 (S.D.N.Y. Oct. 15, 2025).

The record before the Court shows that although defendant filed the request for compassionate release with the warden of his facility, and the warden denied it, defendant did not complete the final two steps of the administrative process.  His motion is therefore denied on that basis alone.  See, e.g., id.; United States v. Quashie, No. 14-cr-0376, 2019 WL 7194211, at *1 (E.D.N.Y. Dec. 26, 2019).

### B.    Extraordinary and Compelling Reasons

Even if defendant had exhausted his administrative remedies, he has failed to demonstrate the kind of extraordinary and compelling reasons for release that the statute requires.  I note at the outset that at least several of defendant's grounds assert sentencing errors – *e.g.*, his prior convictions were too old to count, his criminal history was overstated, his sentence should have been made concurrent to a prior state sentence – cannot be raised on a motion for compassionate release.  See United States v. Antney, No. 17-cr-229, 2021 WL 4502478, at *5 (E.D.N.Y. Sept. 30, 2021) ("A motion for compassionate release should not be used to attack the legitimacy of a judge's imposed sentence – such an attack is properly brought on direct appeal or in a habeas petition, not in a motion for compassionate release brought under

5

18 U.S.C. § 3582 (c)(1)(A)." (collecting cases)).  Although this compassionate release motion is not the appropriate vehicle for many of defendant's arguments, the Court will address them.

If I understand his first argument correctly (and I may not), it is that some of the older crimes in his lengthy criminal history at the time of his sentencing were belatedly prosecuted – that is, he committed the crimes outside the inclusion range for criminal history points under the Guidelines but received points anyway.  He also alleges that these convictions were "minor in nature."  Disregarding those convictions, he asserts, would reduce his criminal history category.

He does not specify which convictions he thinks should not have been counted, nor the effect that disallowing would have had on his sentencing Guidelines. Even a *pro se* litigant has to understand that "judges are not like pigs, hunting for truffles buried in the record." Kane v. DeBlasio, 19 F.4th 152, 167 n.15 (2d Cir. 2021) (quoting United States v. Morton, 993 F.3d 198, 204 n.10 (3d Cir. 2021)).  In addition, this is an argument that could have been raised at sentencing.

Notwithstanding that, the Court has re-reviewed defendant's criminal history from his Presentence Investigation Report.  The oldest conviction that counted in his Guidelines calculation (some were, indeed, excluded because of their age), was an attempted robbery in 1996 when defendant was 18 years old.  Both the crime and the sentence were committed or imposed, respectively, in 1996.  The defendant robbed the victim of a gold bracelet and money at gunpoint.  NYPD officers heard gunshots fired and observed the defendant toss away a loaded firearm.  Defendant was subsequently arrested by NYPD officers and originally charged with murder in the first degree, robbery in the first degree, criminal possession of a weapon in the second degree, criminal use of a weapon in the second degree, and criminal possession of stolen property in the fifth degree.  He pled guilty to the reduced charge of attempted robbery in the

6

second degree.  He was adjudicated a youthful offender and sentenced to an indeterminate 16-month to 4-year term of custody.

There was nothing amiss in my view with counting that 3-point conviction in his Guidelines calculation.  The offense was committed and sentence imposed within the 15-year window under the Guidelines.  See U.S.S.G. § 4A1.2(e)(1).  The conviction was in no way "minor in nature," and if petitioner thinks otherwise (if this is one of the older convictions to which he is referring), that kind of thinking demonstrates reason to deny the instant motion.  One would also have to put aside the horrendous compliance history during his service of the sentence for that crime – an uncountable list of charges including insubordination, use of false identification, selling drugs, fighting, violent conduct, and interference.  Indeed, when he was granted parole by a state court in 1997, it was revoked in less than a year based on a new crime, and he was not paroled again until August 2000, the maximum expiration of his sentence.

The crimes that defendant committed while on parole did not count towards his Guidelines.  The next one that did count was a two-point conviction for possession of marijuana and cocaine upon which defendant was sentenced in 2001.  I see nothing minor or trivial about that one either.

The rest of defendant's more recent convictions, at least those that counted towards his Guidelines calculations (many did not, as they were violations or otherwise excluded) were almost all just as serious.  There is thus no basis for defendant's claim that his criminal history was overstated.  If anything, it was understated.  His criminal history would have supported a career offender designation, but the Court decided not to apply the career offender designation because the non-enhanced total of his criminal history points was enough to put him in Category

VI.  See U.S.S.G. Sentencing Table, Ch. 5, Pt. A.  Nor have there been any amendments to the Guidelines that would get him out of Category VI.

The remainder of defendant's arguments are brief references which, even if taken together, do not raise an issue of extraordinary circumstances.

First, he claims that he's had extraordinary rehabilitation by having a clean record in custody for more than three years.  That doesn't hold up.  Defendant has had two disciplinary infractions within the last three years, essentially for refusal to obey prison staff's orders.  Besides, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason."  U.S.S.G. § 1B1.13(d); see also United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020).

He next makes a conclusory statement that he "is a father with strong family ties."  He doesn't explain what those ties are, or how they make him any different than the unfortunately high number of inmates who are parents.  Plus, family ties, no matter their strength, do not constitute extraordinary or compelling reasons.  What matters – and what defendant has not shown – is whether the defendant is a sole caregiver for a family member.  U.S.S.G. § 1B1.13(b)(3).

Next, he claims that prison conditions warrant extraordinary release – specifically, the COVID-19 pandemic plus unrelated abuse and injury that he's sustained.  First, the "harsh conditions of imprisonment occasioned by the COVID-19 pandemic are not, without more, sufficiently 'extraordinary and compelling' to warrant compassionate release."  United States v. Gonzalez, No. 19-cr-467, 2022 WL 16919842, at *5 (S.D.N.Y. Nov. 14, 2022) (collecting cases).  "If the challenging conditions of confinement caused by the pandemic warranted a

8

sentence reduction here, essentially every inmate who has been in BOP custody at any time since March 2020 would be entitled to a sentence reduction." Id. (citation omitted).

As for defendant's abuse and injury, he vaguely refers to a pending request for special housing, with a passing reference to "abuse[] by correctional officers." He has submitted a medical report noting that he made a complaint for "use of force" resulting in pains to his shoulder and chest and a bloodshot left eye. That's not nearly good enough. The Guidelines require a "serious bodily injury," and state that: "[f]or purposes of this provision [victim of abuse], the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger." U.S.S.G. § 1B1.13(b)(4). His injuries were minor and not affirmed in any of the procedural steps required to recognize them.

Many, many prisoners make the same assertions that defendant has here. See, e.g., United States v. Salgado, No. 15-cr-681, 2022 WL 3043100, at *2 (S.D.N.Y. Aug. 2, 2022) (rehabilitation and a "spotless disciplinary record" do not warrant sentence reduction because "[t]o find otherwise would convert the process for obtaining a compassionate release into a de facto parole system, through which defendants with good behavior are rewarded with sentence reduction," contrary to Congress's intent). None of the points defendant raises, singly or collectively, constitute extraordinary and compelling circumstances.

There is also defendant's argument that his federal sentence should have been imposed to run concurrently with his state sentence. As noted *supra*, a motion for compassionate release is not the right vehicle for this argument. Notwithstanding, this issue was extensively discussed at sentencing; it was not disputed that the acts for which defendant was convicted in New Jersey

9

arose out of entirely separate crimes than his federal charges.  Thus, there was no "double punishment" for the same conduct.

Lastly, there is defendant's ineffective assistance of counsel argument.  Ineffective assistance of counsel is grounds for appellate or habeas relief, not compassionate release.  See United States v. Polanco-Gonzalez, No. 17-cr-0688, 2026 WL 177831, at *3 (S.D.N.Y. Jan. 21, 2026) (collecting cases).  I note, however, that the clock has run out on this argument.  See id. ("[E]ven reading [defendant's] ineffective assistance of counsel argument as a petition for habeas relief under 28 U.S.C. § 2255, it is subject to a one-year statute of limitations running from, at the latest, 'the date on which the judgment of conviction [became] final.'"  (quoting 28 U.S.C. § 2255(f)(1))).

### C.    Consideration of the § 3553(a) Factors

Even if defendant had exhausted his remedies and demonstrated extraordinary and compelling circumstances, he has not shown that a rebalancing of the § 3553(a) factors warrant release or a reduction.  There were no errors in the initial application of those factors.  The offense of which he was convicted was extremely violent and motivated entirely by greed for money to get drugs to feed his addiction.  His taking of educational courses while in custody, although commendable, does not warrant a reassessment of the § 3553(a) factors that I considered at sentencing.

**CONCLUSION**

Defendant has failed to meet any of the requirements for compassionate release or retroactive Guideline amendment.  His motion is accordingly DENIED.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
      July 30, 2026

11